IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JONES LANG LASALLE AMERICAS, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 16-190-SLR |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 313, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM**

At Wilmington this 14th day of July, 2017, having reviewed the motion to dismiss filed by defendant and the papers filed in connection therewith, the court issues its decision based on the following reasoning:

1. **Background.** Jones Lang LaSalle Americas, Inc. ("plaintiff" or "JLLA") operates office facilities on behalf of JP Morgan Chase at two locations in Delaware. (D.I. 1, ¶ 10) Defendant International Brotherhood of Electrical Workers Local Union 313 ("defendant" or "Local 313") is the exclusive bargaining unit for certain JLLA employees at these locations. (Id., ¶ 11) The employment relationship between JLLA and Local 313's members is governed by a collective bargaining agreement ("the CBA"), which sets out a three-step process for the settlement of disputes regarding the interpretation or application of the CBA. (Id., ¶¶ 12-13) Specifically, Section 26 of the

CBA provides that:[1]

(A) Should a difference or dispute arise between the parties hereto as to the interpretation or application of this contract, it shall be resolved in accordance with the following procedure:

Step 1: In the first instance, the grievance shall be submitted in writing by the employee, with the shop steward of the Union, to the Company's Account Manager or other manager designated by the Company ("Designee"). The grievance must be submitted within 0 [sic] working days of the action giving rise to the grievance. A meeting with the employee, shop steward, the Critical Sites Operation Manager and/or Designee or other individuals as determined by the Company will be held to resolve the grievance.

Step 2: If the grievance is not resolved within 5 business days after the above meeting, the business representative may present the grievance to the Company's Account Manager.

Step 3: If the grievance is not settled within 10 business days following Step 2, either party **may submit the grievance to the American Arbitration Association in accordance with its rules.** The decision of the arbitrator shall be binding on both parties and the cost of the arbitrator will be borne equally by both parties. Each party shall be responsible for its, his or her counsel fees.

(B) Any grievance that has not [been] referred to arbitration within 30 days after the aggrieved party knew of the existence of the facts or circumstances giving rise to the grievance shall be deemed to have been waived, unless the parties have agreed that the grievance is [a] continuing grievance. In this case only the claims for damages or relief for events occurring more than 30 days prior to the presentation to the written grievance shall be deemed to have been waived. The time frame of 30 days may be extended upon mutual consent of the Union and the Company.

(C) If the grievance concerns a decision by the Company that directly affects the entire bargaining unit, the parties agree **to attempt to select** an acceptable arbitrator through the American Arbitration Association who will be able to hold an arbitration hearing between 30 days of the

---

[1]Neither party provided the court with an actual copy of the CBA. Indeed, defendant hardly referred to the actual language of the relevant section of the CBA. As a result, the court has had to rely on plaintiff's recitation of Section 26 of the CBA, and has tried to make sense of such by inserting what appears to be missing language.

arbitrator's selection from the panel, and shall notify the American
Arbitration Association of this request at the time of the filing of the demand
for arbitration.

(*Id.*, ¶ 13) (emphasis added)

2. Members of the United Association of Journeyman and Apprentice Plumbers and Pipefitters of the United States and Canada, Local 74 ("Local 74") also perform work at JLLA's Delaware sites. On or about April 7, 2015, the business manager for Local 313 ("Drummond") sent a letter to JLLA's managing director ("Prodan"). In that letter, Drummond informed JLLA that Local 74 members were obligated to pay regular dues or agency shop fees to Local 313, and that failure to do so may result in efforts by Local 313 to terminate the employment of such Local 74 members by JLLA. (*Id.*, ¶¶ 22-23) After a failed attempt on the part of Local 74 and Local 313 to resolve the dues dispute through mediation, Drummond sent a second letter in September 2015 to Prodan, notifying JLLA of its "continuing obligation to terminate all employees [of Local 74] that have not paid such fees and are in violation with [the CBA's Agency Shop clause]." (*Id.*, ¶¶ 24-26) Attached to this second letter was a list of 16 employees who were identified by Drummond as being subject to termination, none of whom have been terminated by JLLA. (*Id.*, ¶¶ 27-28)

3. On January 27, 2016, counsel for Local 313 sent a letter to the American Arbitration Association ("AAA") stating that Local 313 and JLLA had an "unresolved dispute relating to Agency Fees." JLLA then filed a complaint for declaratory relief, seeking a determination that the parties' dispute is not arbitrable. In response, Local 313 has filed a motion to dismiss. The court has jurisdiction pursuant to 28 U.S.C. § 1331, based on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

4. **Standard of review.** Local 313's motion to dismiss is based on multiple grounds for relief, including Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), Fed. R. Civ. P. 12(b)(3) (improper venue), and Fed. R. Civ. P. 12(b)(6) (failure to state a claim). The Third Circuit, however, has indicated that "motions seeking the dismissal of a declaratory judgment action on the basis that arbitration is required are not jurisdictional as they raise a defense to the merits of an action." *Liberty Mutual Fire Ins. Co. v. Yoder*, 112 Fed. App'x 826, 828 (3d Cir. 2004) (citation omitted). *See also Nationwide Ins. Co. of Columbus v. Patterson*, 953 F.3d 44, 45 n.1 (3d Cir. 1991); *Compucom Systems, Inc. v. Getronics Finance Holdings B.V.*, 635 F. Supp. 2d 371, 377 (D. Del. 2009).

5. A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no

4

more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

6. Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp., Inc.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

7. As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the

5

plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

    8. Generally, the "question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). However, "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about **that** matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citations omitted) (emphasis in original). "Courts should not find that parties agreed to arbitrate the question of arbitrability '[u]nless the parties clearly and unmistakably provide otherwise.'" *Fallo v. High-Tech Inst.*, 559 F.3d 874, 877 (8th Cir. 2009). *See also Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372 (Fed. Cir. 2006); *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 78 (Del. 2006). Although the Third Circuit is in general agreement with the majority view expressed above, it has explained the standard in a

more rigorous fashion: "'The burden of overcoming the presumption [of judicial determination] is onerous, as it requires express contractual language unambiguously delegating the question of arbitrability to the arbitrator." *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016) (citation omitted). The question before the court, then, is whether Section 26 of the CBA constitutes clear and unmistakable evidence that the parties intended that the question of arbitrability shall be decided by an arbitrator rather than the court.

9. **Analysis.** Not surprisingly, despite the almost universal agreement about the standard to apply, the answer to the above question depends on the language of each contract under review. For example, the contracts at issue in *Fallo* and *Contec Corp.* provided that disputes arising out of the contracts "shall be" settled/determined by arbitration "in accordance with the Commercial Rules of the American Arbitration Association." In both cases, the courts held that "[t]he act of incorporating . . . the AAA Rules" provided clear evidence of the parties' intent to leave the question of arbitrability to the arbitrator. *Fallo,* 559 F.3d at 878; *Contec Corp.,* 398 F.3d at 211. *Accord Qualcomm, Inc.*, 466 F.3d at 1372-73 (any claim or controversy arising out of the contract "shall be settled by arbitration in accordance with the arbitration rules of the American Arbitration Association.").

10. In contrast, the Third Circuit in *Quilloin* found that, despite the employee's agreement to arbitrate employment disputes "under the Federal Arbitration Act and the procedural rules of the American Arbitration Association," the employee had not agreed to arbitrate the substantive issue of arbitrability. 673 F.3d at 226, 229-30. Likewise, in

7

*Chesapeake Appalachia*, the Third Circuit determined that the arbitration provision at issue did not clearly and unmistakably delegate the question of **class** arbitrability[2] to the arbitrators, despite language in the relevant contract that "the resolution of all such disputes shall be determined by arbitration in accordance with the rules of the American Arbitration Association." 809 F.3d at 749. Similarly, the Delaware Supreme Court in *James & Jackson* concluded that, "[b]ecause the parties' operative agreement expressly authorize[d] courts to provide" the relief sought in the complaint, the arbitration clause at issue did not constitute "clear and unmistakable evidence of the parties' intent to have an arbitrator determine substantive arbitrability." 966 A.2d at 78.

11. The court finds that the CBA, under the specific circumstances at bar, does not present clear and unmistakable evidence of the parties' intent to have an arbitrator determine substantive arbitrability. In the first instance, given that the fee dispute between the parties is more appropriately governed by Section 26(C) rather than Section 26(A), the relevant contractual language only provides that the parties "agree to attempt to select an acceptable arbitrator." Even if Section 26(A), Step 3 were applicable,[3] the language of such is clearly distinguishable from the mandatory language found in the cases cited above. To wit, the CBA merely provides that either party "may submit the grievance to the American Arbitration Association in accordance with its rules." Parsing the language, it is just as reasonable to interpret such to mean

---

[2]The Court noted in this regard that "the whole notion of class arbitration implicates a particular set of concerns that are absent in the bilateral context." *Id.* at 764.

[3]And assuming that defendant actually complied with Steps 1 and 2 of Section 26(A).

8

that the "submission" of the grievance be in accordance with the AAA rules (procedural arbitrability) as opposed to the grievance itself being substantively resolved in accordance with the AAA rules.

12. **Conclusion.** Given the presumption in favor of a judicial determination as to substantive arbitrability, considered in conjunction with the fact that Section 26 of the CBA is susceptible to more than one reasonable interpretation, the court cannot conclude that Section 26 constitutes clear and unmistakable evidence of the parties' intent to have the issue of arbitrability be decided by an arbitrator. Defendant's motion to dismiss (D.I. 7) is denied. An order shall issue.

_____
Senior United States District Judge